**13 CIV 5697**

JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MACIE J. JURKOWSKI, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MOLYCORP, INC., CONSTANTINE E. KARAYANNOPOULOS, MARK A. SMITH, MICHAEL F. DOOLAN, and KEVIN W. JOHNSON, <br><br> Defendants. | **Civil Action No.:** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Macie J. Jurkowski ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the

following based upon personal knowledge as to himself and his own acts, and information and

belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

his attorneys, which included, among other things, a review of the defendants' public documents,

conference calls and announcements made by defendants, United States Securities and Exchange

Commission ("SEC") filings, wire and press releases published by and regarding Molycorp, Inc.

("Molycorp" or the "Company"), analysts' reports and advisories about the Company, and

information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary

support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all

persons other than defendants who purchased Molycorp securities between August 2, 2012 and

August 7, 2013, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.      Molycorp produces and sells rare earth and rare metal materials in the United States and internationally. The Company's Resources segment extracts rare earth minerals, including rare earth concentrates; rare earth oxides (REO), such as lanthanum, cerium, neodymium, praseodymium, and yttrium; heavy rare earth concentrates, which include samarium, europium, gadolinium, terbium, dysprosium, and others; and SorbX, a line of proprietary rare earth-based water treatment products. This segment's products are used in oil refinery catalyst, glass polishing, automotive, water purification, and energy efficiency lighting applications. The company sells its products directly to customers, as well as through distributors. Molycorp was founded in 2010, and is headquartered in Greenwood Village, Colorado.

3.      Rare earth and rare metal products are critical inputs in clean energy technologies, such as hybrid and electric vehicles and wind power turbines; multiple high-tech uses, including mobile devices, fiber optics, lasers and hard disk drives; critical defense applications, such as guidance and control systems and global positioning systems; and advanced water treatment technology for use in industrial, military and outdoor recreation applications.

4.      While the Company has been in existence in various forms since 1949, the initial public offering of the Company's stock occurred on July 29, 2010.

5.      On June 11, 2012 the Company completed the acquisition of Neo Material Technologies, Inc. a/k/a Molycorp Canada, "creating a global rare earth leader with a

combination of a world-class rare earth resource, ultra-high-purity rare earth processing capabilities, and full 'mine-to-magnetics' vertical integration." Combined, the companies span 26 locations across 11 countries, and have over 2,600 employees worldwide.

6.    As a producer and distributor of rare earth materials, one of the critical indicators of the Company's financial strength and well-being is the amount of inventory carried on the Company's balance sheet, and the Company's cost of sales. Amongst the various financial misstatements made by the Company, defendants materially misstated the amount of inventory the Company was carrying on its books and the Company's cost of sales, two critical metrics reviewed by analysts throughout the Class Period.

7.    On August 8, 2013, the Company disclosed that:

> On August 6, 2013, the Audit and Ethics Committee of the Company's Board of Directors, based upon a recommendation from management, determined that its unaudited Condensed Consolidated Financial Statements for the three months ended March 31, 2013 should no longer be relied upon because they contained an error with respect to the reconciliation of its physical inventory to the general ledger, which resulted in a cumulative overstatement of costs of sales and understatement of current inventory of approximately $16.0 million. This error also caused the income tax benefit in the first quarter of 2013 to be overstated by approximately $6.5 million, the disclosure of the consolidated assessment of normal production levels to be understated by approximately $17.4 million, and the consolidated total write-down of inventory to be overstated by $18.0 million.

> \*          \*          \*

> In addition, the Audit and Ethics Committee of the Company's Board of Directors also determined that its unaudited Condensed Consolidated Financial Statements for the three months ended March 31, 2013 should no longer be relied upon because they contained an error with respect to the accrual of certain severance charges, which resulted in an understatement of accrued expenses and selling, general and administrative expense of approximately $2.1 million.

8.    On this news, Molycorp securities declined $0.71 per share or over 9%, to close at $6.69 per share on August 9, 2013.

9.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's reported inventory was materially understated; (2) the Company overstated its income tax benefit in the first quarter of 2013 by approximately $6.5 million; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

13.    Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as the Company's securities are traded in this District.

14.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

4

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, purchased Molycorp securities at artificially inflated prices during the Class Period, and was damaged upon the announcement of the alleged corrective disclosure.

16.     Defendant Molycorp, is a Delaware corporation with its headquarters located at 5619 Denver Tech Center Parkway, Suite 1000, Greenwood Village, Colorado, 80111. Its common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "MCP."

17.     Defendant Constantine E. Karayannopoulos ("Karayannopoulos") is the Company's President and Chief Executive Officer, and was appointed to that position in December 2012.

18.     Defendant Mark A. Smith ("Smith") served as the Company's Chief Executive Officer from October 2008 until December 2012.

19.     Defendant Michael F. Doolan ("Doolan") served at all relevant times as the Company's Executive Vice-President and Chief Financial Officer.

20.     Defendant Kevin W. Johnson ("Johnson") was appointed the Company's Executive Vice President and General Counsel on March 22, 2013, having served prior to that time as the Company's Vice President and Deputy General Counsel.

21.     The defendants referenced above in ¶¶ 17 - 20 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Molycorp produces and sells rare earth and rare metal materials in the United States and internationally.  The Company's business is organized into four reportable segments: (1) Resources; (2) Chemicals and Oxides; (3) Magnetic Materials and Alloys; and (4) Rare Metals.

### Materially False and Misleading
### Statements Issued During the Class Period

23.     On August 2, 2012, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2012.  For the quarter, the Company reported net sales of $104.6 million, and a net loss of $4.1 million. The Company stated in the press release:

> Gross profit decreased substantially from the prior year period as a result of lower product volumes shipped, lower prices, increased production costs, and other transaction costs related to acquiring Molycorp Canada. Gross loss during the quarter was negatively impacted by $30.4 million of expenses related to certain inventory write-downs, the impact of purchase accounting, stock-based compensation in cost of sales, and abnormal costs.

24.     On August 9, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on a Form 10-Q with the SEC signed by Defendants Smith and Doolan and reiterated the Company's previously reported financial results and financial position.   In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Smith and Doolan stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

25.     On November 8, 2012, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2012.  For the quarter, the Company

reported net revenue of $205.6 million, and a gross profit of $10.9 million. The Company

reported in its press release that:

> Gross profit decreased from the prior year period as a result of significantly lower
> pricing and increased production costs, offset by increased volumes. Gross profit
> during the quarter also was negatively impacted by $33.0 million of out-of-
> ordinary expenses, primarily related to purchase accounting adjustments related to
> the Molycorp Canada acquisition and inventory write-downs.

> Molycorp's third quarter loss attributable to common stockholders was $18.9
> million, or a loss of $0.19 per share. Earnings decreased substantially from the
> prior year period as a result of lower selling prices and increased costs, offset in
> part by increased volumes and tax recoveries related to the settling of certain tax
> provisions. Adjusted loss per share of $0.05 reflects operational expansion items,
> out-of-ordinary business expenses, and certain other non-cash items.

> "We are seeing customer demand beginning to stabilize," Smith said. "We have
> customer agreements in place, or are in advanced discussions and product
> qualification efforts with customers, on sales in excess of our Phase 1 capacity. In
> the Lanthanum and NdPr markets, we are seeing demand that will move us into
> Phase 2 production relatively quickly. With cerium, our commercialization of
> SorbXTM products continues to gain traction in the marketplace."

> "Several of our customers continue to work to deplete large volumes of
> stockpiles. We are seeing signs these customers are coming back into the market,
> which is very positive going forward," Smith said.

> "With regard to global trends, output from China continues to be significantly
> reduced," Smith added. "Chinese government officials are stepping up their
> efforts to enforce tougher environmental regulation and to curb illegal mining,
> and these efforts are putting pressure on production. In addition, a growing
> number of China's largest producers have either halted operations or are in the
> process of halting production, including Baotou Steel Rare-Earth, China
> Minmetals, Chalco Rare Earth, and China Nonferrous Metals. Government and
> industry leaders in China acknowledge that these and other actions are being
> implemented for the express purpose of stabilizing or strengthening prices for all
> rare earth products."

26.     On November 9, 2012, the Company filed a quarterly report for the period ended

September 30, 2012 on a Form 10-Q with the SEC signed by Defendants Smith and Doolan and

reiterated the Company's previously reported financial results and financial position. In addition,

the Form 10-Q contained signed certifications pursuant to SOX by Defendants Smith and Doolan

stating that the financial information contained in the Form 10-Q was accurate, and disclosed any

material changes to the Company's internal control over financial reporting.

27.     On March 14, 2013, the Company issued a press release announcing its financial

results for the fourth quarter and fiscal year ended December 31, 2012.  In its press release the

Company stated:

> The Company reported consolidated net revenues of $528.9 million during 2012,
> a 33% increase over the full year 2011, including approximately six months of
> revenues from newly acquired Molycorp Canada assets. The Company sold 9,223
> mt of product across its business segments, net of intercompany sales, at an
> average sales price, or ASP, of $57.35 per kilogram and generated a gross profit
> of $17.3 million in 2012, as compared to $218.9 million during the prior year.
> Gross profit decreased from the prior year as a result of significantly lower
> pricing and increased production costs, offset in part by increased volumes and
> the partial-year inclusion of Molycorp Canada.

> Molycorp reported a loss attributable to common stockholders of $460.9 million,
> or a loss of $4.31 per share. Earnings decreased substantially from the prior year
> as a result of lower selling prices, increased costs, and large long-lived assets
> impairment charges, offset in part by increased volumes and expanded product
> offerings. Adjusted loss per share of $0.37 in fiscal 2012 eliminates the effect of
> operational expansion items, out-of-ordinary business expenses, and certain other
> non-cash items.

> Year-over-year comparisons of the Company's operating results during 2012,
> 2011, and 2010 are significantly affected by the Molycorp Canada acquisition on
> June 11, 2012, the Molycorp Silmet acquisition on April 1, 2011, and the
> Molycorp Metals and Alloys acquisition on April 15, 2011.

28.     On March 18, 2013, the Company filed an annual report for the period ended

December 31, 2012 on a Form 10-K with the SEC signed by, among others, Defendants

Karayannopoulos and Doolan and reiterated the Company's previously reported financial results

and financial position. The annual report also stated that the Company held $3.395 billion of

current inventory.  In addition, the Form 10-K contained signed certifications pursuant to SOX

by Defendants Karayannopoulos and Doolan stating that the financial information contained in

the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

29.     The Form 10-K represented the following in relevant part concerning the Company's inventory and cost of sales:

> Our cost of sales includes the processing costs and the cost of certain raw materials we purchased from outside vendors, which we allocated to the products we produced at our operating facilities. In addition, our cost of sales reflects the cost allocated to the inventory we acquired as part of various business acquisitions. Because many of our costs are fixed, as our production increases or decreases, our average cost per metric ton produced decreases or increases, respectively. Primary production costs include direct labor and benefits, chemicals, natural gas, depreciation and amortization, electricity, maintenance, operating supplies and other plant overhead expenses. Our cost of sales may also reflect the write-down of inventory based on current prices for our products, which could materially affect our consolidated net results of operations.

> Our most significant variable costs are chemicals, raw materials and electricity. In early September 2012, our on-site CHP plant began feeding low-cost, high efficiency electrical power and steam to plants and buildings across the Molycorp Mountain Pass facility. As a result, natural gas costs will replace third-party electricity costs, which we expect will help us bring our power costs down significantly as further described in the Recent Developments section above. In the future, we also intend to produce more of our chemicals for the Molycorp Mountain Pass facility at an on-site plant, which we expect will reduce our variable chemical costs in that facility.

30.     On May 9, 2013, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2013. For the quarter, the Company reported the following results:

> The Company reported consolidated net revenues of $146.4 million during the first quarter of 2013, a 9% increase over the fourth quarter of 2012.

> The Company sold 3,274 mt of product at an ASP of $44.71 per kilogram and generated a gross loss of $20.5 million during the quarter, as compared to a gross loss $20.5 million during the fourth quarter of 2012.

> Molycorp reported a loss attributable to common stockholders of $50.1 million, or $0.33 per share. Adjusted loss per share of $0.15 in the first quarter eliminates the

9

effect of operational expansion items, out-of-ordinary business expenses, and certain other non-cash items.

The Company reported negative cash flows from operating activities of $36.6 million during the quarter, and had $404.8 million in cash and cash equivalents as of March 31, 2013.

During the first quarter, Molycorp's cash capital expenditures were $181.1 million. For the remainder of 2013, the Company estimates that its cash capital expenditures will total approximately $250 million. Approximately $80 million of additional cash capital expenditures related to the Molycorp Mountain Pass facility modernization and expansion project are anticipated to be incurred in 2014, including discretionary expenditures required to expand production beyond the initial planned annual run rate of 19,050 mt, if and when market demand, product pricing, capital availability and financial returns justify such production.

The Company reiterates its expectation that its financial performance for the first half of 2013 will be weaker than the second half of 2012. This is due to typical seasonality resulting in slow rare earth sales in the first quarter, combined with the expectation that its Molycorp Mountain Pass facility will not achieve full-scale commercial production until mid-year 2013.

"Our ongoing production ramp-up at Mountain Pass remains on course, and our increasing production is allowing us to produce for end-use customers as well as provide greater feedstock to our downstream, value-added processing facilities," said Constantine Karayannopoulos, Molycorp's President and CEO. "On the demand side, we are beginning to see signs of a return to more normal levels of demand as the year progresses."

31.     On May 9, 2013, the Company filed a quarterly report for the period ended March 31, 2013 on a Form 10-Q with the SEC signed by Defendants Karayannopoulos and Doolan and reiterated the Company's previously reported financial results and financial position.    In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Karayannopoulos and Doolan stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

32.     The statements referenced in ¶¶ 23 - 31 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which

were known to defendants or recklessly disregarded by them, including that: (1) the Company's reported inventory was materially understated; (2) the Company overstated its income tax benefit in the first quarter of 2013 by approximately $6.5 million; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

33.     On August 8, 2013, the Company finally disclosed that it would delay the filing of its quarterly report for the period ending June 30, 2013, and that:

> On August 6, 2013, the Audit and Ethics Committee of the Company's Board of Directors, based upon a recommendation from management, determined that its unaudited Condensed Consolidated Financial Statements for the three months ended March 31, 2013 should no longer be relied upon because they contained an error with respect to the reconciliation of its physical inventory to the general ledger, which resulted in a cumulative overstatement of costs of sales and understatement of current inventory of approximately $16.0 million. This error also caused the income tax benefit in the first quarter of 2013 to be overstated by approximately $6.5 million, the disclosure of the consolidated assessment of normal production levels to be understated by approximately $17.4 million, and the consolidated total write-down of inventory to be overstated by $18.0 million. The misstatement had no effect on the net cash used in operating activities or cash and cash equivalent at the end of the first quarter of 2013.
>
> In addition, the Audit and Ethics Committee of the Company's Board of Directors also determined that its unaudited Condensed Consolidated Financial Statements for the three months ended March 31, 2013 should no longer be relied upon because they contained an error with respect to the accrual of certain severance charges, which resulted in an understatement of accrued expenses and selling, general and administrative expense of approximately $2.1 million. This error also caused the income tax benefit in the first quarter of 2013 to be understated by approximately $0.8 million. The misstatement had no effect on the net cash used in operating activities or cash and cash equivalent at the end of the first quarter of 2013.

34.     On this news, Molycorp securities declined $0.71 per share or over 9%, to close at $6.69 per share on August 9, 2013.

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Molycorp securities during the Class Period (the "Class"),  and were damaged by the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Molycorp securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Molycorp or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Molycorp;

- whether the Individual Defendants caused Molycorp to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Molycorp securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

13

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Molycorp securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Molycorp securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances

14

under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Molycorp securities; and (iii) cause Plaintiff and other members of the Class to purchase Molycorp securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Molycorp securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Molycorp's finances and business prospects.

48.     By virtue of their positions at Molycorp, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Molycorp, the Individual Defendants had knowledge of the details of Molycorp's internal affairs.

50.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Molycorp. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Molycorp's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Molycorp securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Molycorp's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Molycorp securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

51.     During the Class Period, Molycorp securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Molycorp securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or

16

would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Molycorp securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Molycorp securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of Molycorp, and conducted and participated, directly and indirectly, in the conduct of Molycorp's business affairs. Because of their senior positions, they knew the adverse non-public information about Molycorp's misstatement of income and expenses and false financial statements.

56. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to

Molycorp's financial condition and results of operations, and to correct promptly any public statements issued by Molycorp which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Molycorp disseminated in the marketplace during the Class Period concerning Molycorp's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Molycorp to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Molycorp within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Molycorp securities.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of Molycorp. By reason of their senior management positions and/or being directors of Molycorp, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Molycorp to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Molycorp and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Molycorp.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 14, 2013

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**

Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
lfportnoy@pomlaw.com

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## <u>Certification of Plaintiff</u>
## <u>Pursuant to Federal Securities Laws</u>

1.    I, Mike Jurkowski, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against Molycorp, Inc. ("Molycorp"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my Molycorp securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.    I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in Molycorp securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed ___Aug 13, 2013___

(Date)

(Signature)

MACIEJ (MIKE) JURKOWSKI

(Type or Print Name)

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|------|------|------|------|
| July 24/13 | PURCHASE | MOLYCORP /7000 | 7.5799 per share |
| July 31/13 | —"— | —"— / 2200 | 7.60 —"— |
| July 31/13 | —"— | —"—/ 200 | 7.54 —"— |
| Aug 5/13 | —"— | —"—/ 4,700 | 7.25 —"— |
| Aug 5/13 | —"— | —"— 100 | 7.2499 per share |
| July 31/13 | —"— | —"— 800 | 7.6499 —"— |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Name: MACIEJ (MIKE) JURKOWSKI