UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

MACIE J. JURKOWSKI, Individually and on
Behalf of All Other Persons Similarly Situated,

                         Plaintiff,

     -against-

MOLYCORP, INC., *et al.*,

                         Defendants.

:   **13 Civ. 5697 (PAC)**

:   **ORDER**

-----------------------------------------------------------------x

GAIL FIALKOV, Individually and on
Behalf of All Other Persons Similarly Situated,

                         Plaintiff,

     -against-

MOLYCORP, INC., *et al.*,

                         Defendants.

:   **13 Civ. 5943 (PAC)**

:   **ORDER**

-----------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Jurkowski and Fialkov bring separate class actions alleging violations of federal securities laws by Molycorp, Inc. ("Molycorp"), Constantine E. Karayannopoulos, Mark A. Smith, Michael F. Doolan, and Kevin W. Johnson (collectively, "Defendants") by making false and misleading statements regarding the company's reported inventory, income tax benefits, and internal financial controls. After Molycorp disclosed facts relating to these issues on August 8, 2013, its stock price declined. The classes consist of all purchasers of Molycorp securities during the period from August 2, 2012 and August 7, 2013.

Both plaintiffs move for consolidation of the actions, appointment of lead plaintiff, and approval of lead counsel. In the *Jurkowski* action, Movant Peter Broglio ("Broglio") seeks appointment as lead plaintiff and approval of The Rosen law Firm, P.A. as lead counsel, and in

1

the *Fialkov* action, Movant Gary Armstrong ("Armstrong") seeks appointment as lead plaintiff and approval of Kirby McInerney LLP as lead counsel.[1] Defendants filed no objections.

For the reasons below, the Court DENIES Broglio's motion and GRANTS Armstrong's motion. The Court therefore consolidates the actions, appoints Armstrong as lead plaintiff, and approves Kirby McInerney LLP as lead counsel.

## DISCUSSION

### I.    Consolidation

District courts may consolidate multiple actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). There are more than common questions here. Indeed, *Jurkowski* and *Fialkov* involve identical questions of both law and fact. Both cases allege violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934 and rely on the same underlying facts to support their claims. For example, plaintiffs identify the same press releases, 10-Qs, and 10-Ks which allegedly contained false and misleading statements. *Compare Jurkowski* Compl. ¶¶ 23-32, *with Fialkov* Compl. ¶¶ 12-19. Plaintiffs also identify Molycorp's August 8, 2013 disclosure as revealing Molycorp's fraud on the market. *Compare Jurkowski* Compl. ¶ 33, *with Fialkov* Compl. ¶ 20. Since common questions exist and no party has asserted prejudice, consolidation of *Jurkowski* and *Fialkov* is appropriate. *See Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) (finding consolidation appropriate in a securities fraud action "where the complaints are based on the same public statements and reports") (internal quotations omitted)).

---

[1] Although Armstrong originally moved to be appointed lead plaintiff with Movant Ronald Simmers ("Simmers"), *see* Memorandum of Law in Support of Motion of Gary Armstrong and Ronald Simmers ("Armstrong Br."), *Jurkowski*, ECF No. 10, Simmers subsequently agreed to withdraw from the application, *see* Reply Memorandum of Law in Support of Motion of Gary Armstrong and Ronald Simmers ("Armstrong Reply Br.") at 3, *Jurkowski*, ECF No. 22. Similarly, Movant John Sailer, Jr. ("Sailer") moved to be appointed lead plaintiff and for approval of Pomerantz Grossman Hufford Dahlstrom & Gross LLP as lead counsel, *see* Motion by John Sailer, Jr., *Jurkowski*, ECF No. 15, but later withdrew his motion, *see* Notice of Withdrawal, *Jurkowski*, ECF No. 17.

2

## II.    Appointment of Lead Plaintiff

In a Private Securities Litigation Reform Act ("PSLRA") class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  Courts presume that the most adequate plaintiff is the plaintiff who: (1) has either filed a complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief sought, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class."  When appointing a lead plaintiff, a court should only consider whether the movant has made a *prima facie* showing that the requirements of Rule 23 would be satisfied.  *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008).

Both Armstrong and Broglio moved to be named lead plaintiff and each satisfy the first requirement.  To determine who has the largest financial interest, a court examines the number of shares purchased during the class period, the total net funds expended on those purchases, and the approximate losses suffered.  *See Andrada v. Atherogenics, Inc.*, 05 Civ. 00061, 2005 WL 912359, at *3 (S.D.N.Y. Apr. 19, 2005).  Armstrong alleges he purchased 3,665 shares, spent $34,633, and suffered $11,470 in losses.  *See* Declaration of Ira M. Press, *Jurkowski*, ECF No. 11, Ex. 4; Armstrong Reply Br. at 2 n.4.  Broglio alleges he purchased 2,000 shares, spent $42,000, and suffered $29,068 in losses.  *See* Declaration of Phillip Kim, *Jurkowski*, ECF No. 14, Ex. 3.[2]  But Broglio's alleged losses are not straightforward.

---

[2] To calculate losses, the parties subtracted from the total amount paid either (1) the current value of the shares, if retained, or (2) the price the shares were sold at, if sold.  Pursuant to the PSLRA, retained shares are valued at their

Broglio "purchased his MolyCorp stock in connection with put contracts he sold." *See* Reply Memorandum in Further Support of Broglio's Motion ("Broglio Reply Br.") at 2, *Jurkowski*, ECF No. 23. "A put option gives the holder the right to sell an asset at a certain price (the strike price) within a specific period of time." *See In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 98 (D. Conn. 2006) (internal quotations omitted). "'For this option a premium is paid, and the contract is worth more or less than the premium depending upon the direction of the market price of the underlying stock relative to the striking price.'" *Id.* (quoting *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504 (3d Cir. 1988)). Broglio sold put options on two dates. He sold put options for 1,000 shares on January 10, 2012 that the holder could redeem at $25 per share on January 10, 2013. He made a total of $6,200 from this sale. Next, in August 2012, Broglio sold put options for 1,000 shares that the holder could redeem at $17 per share on March 10, 2013. He made a total of $5,850 from this sale. The options purchasers subsequently redeemed the contracts and therefore Broglio was obligated to purchase 1,000 Molycorp shares on January 18, 2013 for $25,000, and 1,000 Molycorp shares on March 20, 2013 for $17,000.

It is unlikely that Broglio has the largest financial interest in the relief sought in these actions. Plaintiffs seek relief based on allegedly false or misleading statements that Defendants made between August 2, 2012 and August 7, 2013. *See Jurkowski* Compl. ¶¶ 1, 9. But Broglio's purchase price in the first put option was set on January 10, 2012—well before this time period. Thus, in setting the price at $25 per share, Broglio could not have relied on any actionable misstatements alleged in the complaints and therefore cannot seek relief for his subsequent purchase of Molycorp stock. As to the second put option, Broglio alleges to have

---

average closing price during the 90 day period following the close of the Class Period. *See* 15 U.S.C. § 78u-4(e). Since the motions were submitted prior to the end of the 90 day period, Armstrong and Broglio used slightly different values in calculating the remaining shares' values. Such differences are *de minimis* and are not factors in the Court's analysis.

sold the put option in August, 2012. Even if his stock purchases pursuant to this option count towards his financial interest, his gains from the options sale—$5,850—must be subtracted from his purchase price. Accordingly, Broglio's total loss would equal just $4,830,[3] which is less than half of Armstrong's alleged losses during the class period.

Finally, Broglio is not a proper lead plaintiff because his claims are not typical of the class. "Typicality requires that a class representative 'have the incentive to prove all the elements of the cause of action . . . .'" *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001) (quoting *Daniels v. Amerco*, No. 81 Civ. 3801, 1983 WL 1794 (S.D.N.Y. March 10, 1983)). "The Court is to assess whether Plaintiffs' claims arise from the same event or course of conduct which in turn has given rise to the claims of other class members based upon the same legal theory." *Id.* Broglio claims that having "engaged in options trading does not render him inadequate." *See* Broglio Reply Br. at 2, n.2. But the cases Broglio cites involved proposed lead plaintiffs who sold put options during the class period. *See, e.g., In re Priceline.com*, 236 F.R.D. at 98; *In re Scientific-Atlanta Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1330 n.12 (N.D. Ga. 2007). Broglio, however, sold put options before the class period and therefore there is no "link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *See In re Priceline.com*, 236 F.R.D. at 100 (internal quotations omitted). Furthermore, even if Broglio had sold the options within the class period, an options holder would not be the most appropriate lead plaintiff for an entire securities class action. *See, e.g., Andrada*, 2005 WL 912359, at *5. As a result, the Court holds that Broglio's claims do not arise from the same event giving rise to relief and therefore are atypical of the class.

---

[3] Broglio retains 1,000 shares, which are valued at the 90-day post-Class period average price of $6.32 per share. Accordingly, the Court calculates the losses by subtracting $6,320 (value retained) and $5,850 (value gained by the put option sale) from $17,000 (the purchase price).

Armstrong moves to be named lead plaintiff, has the largest financial interest, and satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Armstrong is the most adequate plaintiff and accordingly is appointed lead plaintiff for the consolidated action.

## III.    Approval of Lead Counsel

Once a lead plaintiff has been designated, that plaintiff "shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. § 78u-4(a)(3)(B)(v). No objection has been raised as to the adequacy of Kirby McInerney LLP's representation and the Court is satisfied that the firm is qualified and experienced in prosecuting securities fraud class actions. Accordingly, the Court designates Kirby McInerney LLP as lead counsel.

## CONCLUSION

The Court DENIES Broglio's motion and GRANTS Armstrong's motion. Accordingly, *Jurkowski* and *Fialkov* are hereby consolidated pursuant to Federal Rule of Civil Procedure 42(a). The Clerk of the Court is directed to designate 13 Civ. 5697 (PAC) as the lead case, and terminate 13 Civ. 5943 (PAC). The caption for the consolidated action is changed to *In re Molycorp, Inc. Securities Litigation*, 13 Civ. 5697 (PAC). Armstrong is appointed as lead plaintiff for the consolidated action and Kirby McInerney LLP is appointed as lead counsel.

Dated:  New York, New York
        April 2, 2014

                                    SO ORDERED

                                    _____
                                    PAUL A. CROTTY
                                    United States District Judge

6